IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:17-CV-66-D

JOHN D. MCALLISTER, )
)
Plaintiff, )
)
v. ) **ORDER**
)
DETECTIVE TIM MALFITANO, )
et al., )
)
Defendants. )

On April 3, 2017, John D. McAllister ("plaintiff" or "McAllister"), proceeding pro se, filed a complaint pursuant to 42 U.S.C. § 1983 [D.E. 1]. McAllister names as defendants two detectives and the chief of the Jacksonville Police Department ("the JPD defendants") and two members of the Onslow County District Attorney's Office. McAllister alleges Fourth, Sixth, and Fourteenth Amendment violations arising out of his arrest on January 5, 2016. See 2d Am. Compl. [D.E. 53] 2–7. McAllister seeks declaratory relief, injunctive relief, compensatory damages, and punitive damages. Id.

On July 12, 2018, McAllister moved for summary judgment [D.E. 60] and focused on whether defendants complied with the scheduling order and whether the two defendants from the Onslow County District Attorney's Office are in default. See Pl.'s Mot. Summ. J. [D.E. 60] 3–4. On July 20, 2018, the two defendants from the Onslow County District Attorney's Office moved to dismiss the second amended complaint pursuant to Rule 12(b) of the Federal Rule of Civil Procedure [D.E. 62]. On July 27, 2018, the JPD defendants moved for summary judgment [D.E. 65]. See Fed. R. Civ. P. 56. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the

court notified McAllister about defendants' motions, the consequences of failing to respond, and the response deadlines [D.E. 64, 68]. McAllister responded in opposition to defendants' motions [D.E. 67, 69]. Defendants did not respond in opposition to McAllister's motion for summary judgment, and the time within which to do so has expired. As explained below, the court grants defendants' motions and denies McAllister's motion.

I.

On the night of January 5, 1993, defendants Tim Malfitano ("Malfitano") and Steven Selogy ("Selogy"), who were then detectives with the JPD, arrested a man named Henry Lee Danley ("Danley") following a foot pursuit in "a high crime area known as an open air market for the sale of illicit drugs." 2d Malfitano Decl. [D.E. 65-3] ¶¶ 4–14; see Exs. [D.E. 65-3] 7–9 (1993 JPD incident report); Selogy Decl. [D.E. 65-4] ¶¶ 6–9. Danley had five .22 caliber rounds of ammunition at the time of his arrest, and Malfitano located a .22 caliber revolver on the path that Danley ran on during the chase. See 2d Malfitano Decl. [D.E. 65-3] ¶ 12; Exs. [D.E. 65-3] 8; Selogy Decl. [D.E. 65-4] ¶ 8. The officers transported Danley to JPD for processing. See 2d Malfitano Decl. [D.E. 65-3] ¶ 14. After searching the firearm's serial number, officers determined that it was stolen from Jones County, and Danley informed Malfitano that he received it from a man named "Cockeye." See id. ¶¶ 15–19; Exs. [D.E. 65-3] 8; Selogy Decl. [D.E. 65-4] ¶ 10. Selogy knew that "Cockeye" was McAllister's alias, and Danley identified McAllister as "Cockeye" in a photo lineup. See 2d Malfitano Decl. [D.E. 65-3] ¶¶ 20–21; Exs. [D.E. 65-3] 8; Selogy Decl. [D.E. 65-4] ¶¶ 11–12. McAllister acknowledges that his nickname is "Cockeye." [D.E. 65-5] 14.

On January 7, 1993, Malfitano and Selogy presented arrest warrants for McAllister to an Onslow County magistrate, who issued the warrants on January 7, 1993. See 2d Am. Compl. [D.E. 53] 2–3; Exs. A, B [D.E. 53-1, 53-2] (arrest warrants); Pl.'s Mot. Summ. J., Exs. A, B [D.E. 60-1,

2

60-2] (same); 2d Malfitano Decl. [D.E. 65-3] ¶¶ 22–24; Exs. [D.E. 65-3] 6; Selogy Decl. [D.E. 65-4] ¶¶ 13–14. The warrants charged McAllister with possession of a firearm by a convicted felon and possession of a stolen firearm. See [D.E. 53-1]; [D.E. 53-2]. Malfitano and Selogy did not have any further interactions with McAllister after the magistrate issued the warrants. See 2d Malfitano Decl. [D.E. 65-3] ¶ 25; Selogy Decl. [D.E. 65-4] ¶ 15; [D.E. 65-5] 22.

McAllister left North Carolina in January 1993 and moved to Kentucky. See [D.E. 65-5] 6. Despite moving to Kentucky, McAllister continued to interact with the North Carolina criminal justice system. In March 1993, McAllister was arrested in Kentucky on a warrant charging McAllister with felonious larceny of a car belonging to Mary Elizabeth Pugh. Pugh had reported the car stolen in North Carolina. See McCallister v. Lee, No. 7:13-CV-154-FL, 2014 WL 3721428, at *1–2 (E.D.N.C. May 8, 2014) (citations omitted) (unpublished), report and recommendation adopted, 2014 WL 3700337 (E.D.N.C. July 24, 2014) (unpublished), aff'd, 585 F. App'x 56 (4th Cir. 2014) (per curiam) (unpublished). North Carolina sought to extradite McAllister concerning the charge. See McCallister, 2014 WL 3721428, at *1–2. In September 1993, a Kentucky court dismissed extradition proceedings against McAllister. See id.

In September 1998, while McAllister was in North Carolina, the Onslow County Sheriff's Department arrested McAllister on the charge underlying the 1993 arrest warrant. See id. at *2. On November 19, 1998, McAllister (who had the assistance of counsel) pleaded guilty in Onslow County District Court to possession of stolen property for conduct underlying the 1993 warrant involving Pugh's car. Id.

In 2004, McAllister was convicted in Onslow County Superior Court of common law robbery and attempted larceny. The court sentenced McAllister as a habitual felon based, in part, on his 1998 conviction of possession of stolen property. See id.; 2d Am. Compl. [D.E. 53] 4–5; Ex. C [D.E. 53-

3

3]; Ex. D [D.E. 53-4]; Ex. E [D.E. 53-5]; Ex. H [D.E. 53-8]; Ex. L [D.E. 53-12]; [D.E. 65-5] 4–5; Pl.'s Mot. Summ. J., Ex. C [D.E. 60-3] 1; Ex. D [D.E. 60-4]; Ex. E [D.E. 60-5].

On January 5, 2016, a JPD officer initiated a traffic stop of McAllister. See 2d Am. Compl. [D.E. 53] 2; 2d Malfitano Decl., Ex. A [D.E. 65-3] 6. The officer performed a warrant check on McAllister, learned that the 1993 arrest warrants obtained by Malfitano and Selogy were pending, and arrested McAllister. See 2d Am. Compl. [D.E. 53] 2–3; 2d Malfitano Decl., Ex. A [D.E. 65-3] 6. The officer took McAllister to the Onslow County Jail, where a magistrate set a secured bond and a court date. See 2d Malfitano Decl., Ex. A [D.E. 65-3] 6. Onslow County District Attorney Ernie J. Lee ("Lee") assigned Niccoya Dobson ("Dobson"), an assistant district attorney, to prosecute the case. See 2d Am. Compl. [D.E. 53] 5–6. On February 16, 2016, Dobson dismissed the case. See id., Ex. G [D.E. 53-7] (disposition screens); Pl.'s Mot. Summ. J., Exs. G, H [D.E. 60-7, 60-8] (same).

McAllister contends that the 1993 warrants are "a forgery." 2d Am. Compl. [D.E. 53] 4–6. McAllister also alleges that the warrants "are completely fabricated" because they were not "returned to the clerk of court" within 180 days of their issuance and "have never been signed." Id. at 3. McAllister contends that "the Onslow County District Attorney office and the Jacksonville Police Department [have] a history of counterfeiting warrant[s] to . . . maliciously prosecute" McAllister and "a history of falsifying cases to maliciously prosecut[e McAllister] with no records to match." Id. at 3, 6.

In support of his allegations, McAllister alleges that he was unable to obtain statements or reports from the Onslow County District Court concerning his 1998 conviction because the court does not have any such records. See 2d Am. Compl. [D.E. 53] 5; Exs. J, K [D.E. 53-10, 53-11]. McAllister also alleges that, during his 1998 and 2004 prosecutions and incarceration, the 1993

4

arrest warrants "never came up." 2d Am. Compl. [D.E. 53] 5. Moreover, McAllister alleges that in August 1993, the Onslow County Sheriff's Department informed Kentucky law enforcement officials that there were no pending charges against McAllister. See id. at 4; Ex. D [D.E. 53-4].

In addition to suing Malfitano, Selogy, Lee, and Dobson, McAllister also names JPD Chief Michael Yaniero as a defendant. McAllister alleges that Chief Yaniero "is responsible for the Jacksonville Police Department over all policies, procedures, practices, supervision and functioning of the police department." Id. at 5. McAllister seeks declaratory and injunctive relief, compensatory damages, and punitive damages. See id. at 7.

II.

Lee and Dobson move to dismiss the complaint and argue that McAllister failed to effect service on them. See Fed. R. Civ. P. 12(b)(5); [D.E. 63] 4–7. Rule 4(j) describes the procedure for properly effecting service of a summons and complaint on a state official. See Fed. R. Civ. P. 4(j). If a plaintiff fails to properly effect service of process within 90 days of filing the complaint, the court must dismiss the action without prejudice, unless the plaintiff can show good cause for the failure to properly serve the defendants. See Fed. R. Civ. P. 4(m). Pro se status does not "establish good cause, even where the pro se plaintiff mistakenly believes that service was made properly." Hansan v. Fairfax Cty. Sch. Bd., 405 F. App'x 793, 794 (4th Cir. 2010) (per curiam) (unpublished). "Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." Koehler v. Dodwell, 152 F.3d 304, 306 (4th Cir. 1998). When a defendant contests proper service, a plaintiff must prove proper service. See Scott v. Md. State Dep't of Labor, 673 F. App'x 299, 304 (4th Cir. 2016) (per curiam) (unpublished); Reale v. Wake Cty. Human Servs., No. 5:11-CV-682-D, 2013 WL 2635181, at *1 (E.D.N.C. June 12, 2013) (unpublished).

5

McAllister failed to properly serve Lee and Dobson. "In North Carolina, service on an agency or officer of the state is governed by North Carolina Rule of Civil Procedure [4(j)(4)]." Cooper v. Stanback, No. 1:13CV571, 2015 WL 1888285, at *2 (M.D.N.C. Apr. 15, 2015) (unpublished), report and recommendation adopted, 2015 WL 2357264 (M.D.N.C. May 15, 2015) (unpublished); see N.C. Gen. Stat. § 1A-1, Rule 4(j)(4). A state agency can be properly served:

> by personally delivering a copy of the summons and of the complaint to the process agent appointed by the agency in the manner hereinafter provided; by mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to said process agent; or by depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the process agent, delivering to the addressee, and obtaining a delivery receipt.

N.C. Gen. Stat. § 1A-1, Rule 4(j)(4)(a). State agencies must appoint a process agent and file the name and address of the agent with the Attorney General. See id. Rule 4(j)(4)(b). If a state agency fails to designate a process agent, service may made upon the agency by serving the Attorney General or a deputy or assistant attorney general. See id. Rule 4(j)(4)(c).

Lee and Dobson are part of the North Carolina Administrative Office of the Courts, which has designated Jonathan R. Harris, General Counsel, as its process agent. See N.C. Dep't of Justice, Process Agent Directory, https://www.ncdoj.gov/getdoc/f85e2106-9532-4a64-9c58-ebb251165639 /2-6-4-3-2-Process-Agent-Directory.aspx (last visited Feb. 7, 2019). McAllister did not properly serve Lee or Dobson. Accordingly, the court grants their motion to dismiss for failure to effect service.

Alternatively, McAllister has failed to state a claim against Lee and Dobson. Prosecutors are absolutely immune when carrying out the judicial phase of prosecutorial functions, including initiating a judicial proceeding, appearing in court, or terminating a judicial proceeding. See, e.g., Van de Kamp v. Goldstein, 555 U.S. 335, 342 (2009); Buckley v. Fitzsimmons, 509 U.S. 259,

6

269–70 (1993); Imbler v. Pachtman, 424 U.S. 409, 427–31 (1976). Thus, the court grants their motion to dismiss.

## III.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

"When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, LLC, 630 F.3d 351, 354 (4th Cir. 2011). Additionally, "the district court must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." Robinson v. Wix Filtration Corp., 599 F.3d 403, 409 n.8 (4th Cir. 2010) (emphasis and quotation omitted); see Stevenson v. City of Seat Pleasant, 743 F.3d 411, 416 n.3 (4th Cir. 2014).

"Allegations that an arrest made pursuant to a warrant was not supported by probable cause, or claims seeking damages for the period after legal process issued"—e.g., post-indictment or arraignment—are considered a section 1983 malicious prosecution claim. Brooks v. City of Winston-Salem, 85 F.3d 178, 182 (4th Cir. 1996). Such a claim "is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) (quoting Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000)). "To succeed, a plaintiff must show that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in the plaintiff's favor." Humbert v. Mayor & City Council of Balt. City, 866 F.3d 546, 555 (4th Cir. 2017) (quotations and alterations omitted), cert. denied, 138 S. Ct. 2602 (2018); see Smith v. Munday, 848 F.3d 248, 252, 257 (4th Cir. 2017); Dorn v. Town of Prosperity, 375 F. App'x 284, 288 (4th Cir. 2010) (unpublished); Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998).

Where the alleged malicious prosecution arose from an arrest warrant, a plaintiff must show that the person seeking the arrest warrant "knowingly and intentionally or with a reckless disregard for the truth either made false statements in their affidavits [in support of the warrant] or omitted facts from those affidavits, thus rendering the affidavits misleading." Evans, 703 F.3d at 650 (quotation omitted); see Franks v. Delaware, 438 U.S. 154, 155–56 (1978); Miller v. Prince George's Cty., 475 F.3d 621, 627 (4th Cir. 2007); [D.E. 66] 7–8; [D.E. 69-1] 3–4. Specifically, a plaintiff first must make a substantial preliminary showing of intentional or reckless falsehood in the affidavit. "Allegations of negligence or innocent mistake are insufficient" to demonstrate a constitutional violation. Franks, 438 U.S. at 155–56, 171. "Second, [a plaintiff] must demonstrate that those false statements or omissions are material, that is, necessary to a neutral and disinterested magistrate's

authorization of the [warrant]." Evans, 703 F.3d at 650 (quotations and alteration omitted); see Massey v. Ojaniit, 759 F.3d 343, 357 (4th Cir. 2014).

Even viewing the record in the light most favorable to McAllister, McAllister has failed to show intentional or reckless falsehood in the affidavit. See Massey, 759 F.3d at 356–57; Evans, 703 F.3d at 650–52; Simpson v. Town of Warwick Police Dep't, 159 F. Supp. 3d 419, 436 (S.D.N.Y. 2016). Malfitano and Selogy were entitled to rely on information that they obtained from Danley and to seek the warrants. See Simpson, 159 F. Supp. 3d at 436. Moreover, McAllister's focus on the delay in serving him with the 1993 arrest warrants and his perceptions concerning alleged procedural defects in the warrants do not alter this conclusion. See Safar v. Tingle, 859 F.3d 241, 246–47 (4th Cir. 2017); Simpson, 159 F. Supp. 3d at 437–38 & n.19 (collecting cases). Thus, the court grants summary judgment to Malfitano and Selogy and denies McAllister's motion for summary judgment.

As for Chief Yaniero, to avoid summary judgment, McAllister must show a genuine issue of material fact concerning whether (1) a constitutional injury occurred as a result of an employee's conduct; (2) Chief Yaniero had a policy or custom that amounted to a deliberate indifference to the deprivation of plaintiff's constitutional rights; and (3) this policy or custom caused the alleged constitutional injury. See, e.g., City of Canton v. Harris, 489 U.S. 378, 388–92 (1989); Smith v. Atkins, 777 F. Supp. 2d 955, 966–67 (E.D.N.C. 2011). "[T]he inadequacy of police training may serve as a basis for [section] 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Harris, 489 U.S. at 388; see Connick v. Thompson, 563 U.S. 51, 60–62 (2011); Bd. of Comm'rs v. Brown, 520 U.S. 397, 408–10 (1997); Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000); Carter v. Morris, 164 F.3d 215, 220–21 (4th Cir. 1999). Thus, to establish a claim under section 1983 for failure to train law

9

enforcement officers, a plaintiff must show that "officers are not adequately trained 'in relation to the tasks [that] the particular officers must perform' and this deficiency is 'closely related to the ultimate injury.'" Lytle v. Doyle, 326 F.3d 463, 473 (4th Cir. 2003) (quoting Harris, 489 U.S. at 390–91). Moreover, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. . . . Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Thompson, 563 U.S. at 62 (quotation omitted); see Doe, 225 F.3d at 456; Smith, 777 F. Supp. 2d at 967. Only in the rarest of circumstances may "the unconstitutional consequences of failing to train . . . be so patently obvious that a city could be liable under [section] 1983 without proof of a pre-existing pattern of violations." Thompson, 563 U.S. at 64; see, e.g., Okla. City v. Tuttle, 471 U.S. 808, 824 (1985) (plurality opinion).

Even viewing the record in the light most favorable to McAllister, McAllister has failed to make the requisite showing. McAllister has "not identified any specific training deficiencies, and there is no pattern of unconstitutional conduct." Smith, 777 F. Supp. 2d at 967–68; see Simpson, 159 F. Supp. 3d at 438–39. Thus, the court grants Chief Yaniero's motion for summary judgment and denies plaintiff's motion for summary judgment.

IV.

In sum, the court GRANTS defendants' motions to dismiss and for summary judgment [D.E. 62, 65], and DENIES plaintiff's motion [D.E. 60]. Defendants may file motions for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This 8 day of February 2019.

                                                      JAMES C. DEVER III
                                                      United States District Judge